UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ASHLEY MASSENGILL GRAYSON                                                              PLAINTIFF

VS.                                                          CIVIL ACTION NO.: 3:23CV005-MPM-RP

DERRICKA HARWELL et al                                                              DEFENDANTS

**ORDER**

This cause comes before the court on the motion of plaintiff Ashley Massengill Grayson to dismiss the defamation counter-claim asserted against her by defendant Derricka Harwell. Having considered the memoranda and submissions of the parties, this court is prepared to rule.

This lawsuit presents competing allegations of defamation asserted by two African-American women of some prominence, whose online acquaintance has become a bitter feud. In her complaint, Ms. Grayson describes herself as an individual "engaged in the business of digital consulting" who "depends upon social media to generate and maintain business for her company." [Complaint at 2]. The complaint asserts that she is the "owner of Digital Course Recipe, a consulting agency" located in North Carolina. [*Id.* at 1]. In her motion to dismiss Ms. Harwell's defamation counter-claim against her, Ms. Grayson describes her allegations in this lawsuit as follows:

> Specifically, the Complaint alleges that on April 1, 2022, the Defendant, Derricka Harwell posted defamatory remarks about the Plaintiff via Facebook. The posts of Derricka Harwell were posted underneath pictures of the Plaintiff and stated that she, Ms. Harwell "had to get legal and file a whole restraining order on this one" referring to the Plaintiff. The post went viral, being shared over forty thousand (40,000) times.

[Motion to dismiss at 1]. In her complaint, Ms. Grayson insists that, contrary to Ms. Harwell's Facebook post, she "has never been the subject of a restraining order filed by the Defendant" and

1

that "[c]ontrary to the defamatory statements of the Defendant, the Plaintiff maintains a reputation for being a law-abiding citizen who does not harass or stalk others." [Complaint at 2].

In her response in opposition to the motion to dismiss her counterclaim, Ms. Harwell paints a very different portrait of the events leading up to this lawsuit, as follows:[1]

> 2. That beginning in September of 2020, [Ms. Harwell] and [Ms. Grayson], became acquaintances via Facebook, as they are in the same profession and know mutual people.
> 3. That during the course of the relationship, [Ms. Grayson] began to post derogatory comments regarding Defendant/Counter-Plaintiff via social media (Facebook). Defendant/Counter-Plaintiff never reacted but did block [Ms. Grayson's] account on Facebook.
> 4. That on or about August 2022, upon information and belief, [Ms. Grayson] began to anonymously engage in a pattern of posting hundreds of false and defamatory statements regarding [Ms. Harwell] on various social media sites, as well as sending [Ms. Harwell] harassing direct messages under various anonymous usernames on Facebook.
> 5. That also in August of 2022, upon information and belief, [Ms. Grayson] posted [Ms. Harwell's] home address and phone numbers on social media in an attempt to follow, alarm, and/or harass [Ms. Harwell].
> 6. That on August 18, 2022, after numerous attempts to report the harassment to law enforcement and obtain a restraining order, [Ms. Harwell] reported the harassment online and was able to get an official police report filed against [Ms. Grayson], in order to obtain a restraining order.
> 7. That on or about September 26, 2022, the Federal Bureau of Investigations (FBI) came to [Ms. Harwell's] home and advised her that [Ms. Grayson] attempted to hire individuals to murder [sic],[2] specifically in the presence of her children.
> 8. That as a result, [Ms. Harwell], upon the request of the FBI and out of fear for her life was forced to move herself and her family from their home and was placed under protection.
> 9. That videos of the murder for hire have been posted on various social media sites, podcasts, and interviews.
> 10. That to cover up the murder-for-hire investigation, [Ms. Grayson] has proceeded to sue the multiple victims of the attempted murder for hire for defamation.

[Response at 1-2].

---

[1] Due to the awkward "Defendant/Counter-Plaintiff" and "Plaintiff/Counter-Defendant" nomenclature used in Ms. Harwell's briefing, this court will substitute the parties' actual names as needed to provide clarity.
[2] Although no name was used at this point in Ms. Harwell's briefing, she is presumably referring to herself.

Ms. Harwell thus contends that this defamation lawsuit against her is part of an attempt by Ms. Grayson to "cover up the murder-for-hire investigation" against her. In her defamation counter-claim, Ms. Harwell further alleges:

> That [Ms. Grayson] ha[s] posted statements under anonymous names (Amanda Stone and Jane Deaux) that were traced back to [Ms. Grayson], alleging that [Ms. Harwell] has a fraudulent business and reposted videos of a disgruntled tenant with the defamatory and derogatory hashtags, on or about October 2022.

[Answer and counterclaim at 18]. In her response, Ms. Harwell, a Desoto County resident, describes herself as "a public figure and CEO of Beautify Credit and a real estate mogul," [response at 1], and she, much like Ms. Grayson, alleges that the defamatory statements made against her have caused her economic injury in her business.

Needless to say, the parties offer dramatically different characterizations of the facts of this case, and this court suspects that, at the end of the day, it will be left to a jury to decide whose version of events is accurate. At this juncture, however, this court must address Ms. Grayson's motion to dismiss the defamation counter-claim against her on the basis of the dismissal of a separate defamation action which was filed by Ms. Harwell in Desoto County Circuit Court. In asserting that the dismissal of Ms. Harwell's state court defamation action should be granted collateral estoppel effect in this case, Ms. Grayson must first confront the fact that this state court action was filed not against her, but rather against Ms. Rachel Maclin. Ms. Maclin is the "disgruntled tenant" referenced in the portion of the defamation counter-claim quoted above, and, once again, Ms. Harwell alleges that Ms. Grayson anonymously reposted Ms. Maclin's youtube video which was critical of Ms. Harwell and her business practices.[3]

It should be noted at the outset that a party's claim is barred by collateral estoppel if: (1) the issue in both actions are identical; (2) the issue was actually litigated in the prior action; and (3) the

---

[3] *See* https://www.youtube.com/watch?v=X544UFZ4tYU

determination of the issue was a necessary part of the judgment in that action. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). Significantly, the Mississippi Supreme Court has held that collateral estoppel may be applied against a party who was not a party to the original suit from which the judgment derives, so long as the missing party was "in privity" with the party in the original suit. For a nonparty to be considered in privity, he or she must be "connected with [the former action] in their interests [and be] affected by the judgment with reference to interest involved in the action, as if they were parties." *Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387, 401–02 (Miss. 2013). While it thus seems clear that nonparties *may* be held to be in privity with parties to a particular lawsuit for collateral estoppel purposes, Ms. Grayson fails to submit arguments supporting a conclusion that Ms. Harwell was, in fact, so "connected with [the Desoto County action] in [her] interests [and was so] affected by the judgment with reference to interest involved in the action" that she should be considered "in privity" with Ms. Maclin under the *Baker & McKenzie* standard. Ms. Grayson has the burden of demonstrating that collateral estoppel applies in this case, and this court concludes that her failure to offer arguments on this point is, standing alone, sufficient to reject her motion to dismiss Ms. Harwell's defamation counterclaim.

Even if this court were to somehow find that the privity requirement is met in this case, it would still conclude that, under Ms. Grayson's own description of the Desoto County action, the trial judge in that case made no final ruling that the defamation claims against Ms. Maclin lacked factual merit. In describing the Desoto County lawsuit, Ms. Grayson writes in her reply brief that:

> In order to satisfy the second prong, a party must show that the prior action was "actually litigated". *Petro–Hunt*, 365 F.3d at 397. "An issue is actually litigated when the issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Mack Energy Co. v. Red Stick Energy, LLC*, No. CV 16-1696, 2019 WL 4602242, at *6 (W.D. La. Sept. 20, 2019) (internal quotations omitted). The issue in

4

> Defendants' prior action went before the Court on Rachel Maclin's (prior defendant) Motion to Dismiss. An Order was entered on January 12, 2021, Dismissing Harwell's Complaint against Maclin but allowing the then Plaintiff, Harwell to amend her Complaint. This was never done, and a Joint Order of Dismissal was entered shortly after on January 14th, 2021, Dismissing Harwell's Complaint with prejudice. "The general rule is that a dismissal with prejudice functions as a dismissal on the merits. After a defendant is dismissed with prejudice, the plaintiff's case against that defendant has ended." *Methodist Healthcare-Olive Branch Hosp. v. McNutt*, 323 So. 3d 1051, 1053 (Miss. 2021).

[Reply brief at 5].

Ms. Grayson thus asserts that an order was entered in the Desoto County action "on January 12, 2021, dismissing Ms. Harwell's Complaint against Ms. Maclin but allowing the then Plaintiff, Harwell to amend her Complaint." *Id.* As a federal trial judge, this court has issued many similar orders finding that a complaint failed to properly state a claim but nevertheless granting the plaintiff an opportunity to submit an amended complaint. This court does not regard such orders as a "determination" of the underlying merits of the claim in question, since the fact that a plaintiff is being granted an opportunity to file an amended complaint generally reflects an openness on the part of this court to the possibility that the she might, in fact, be able to assert valid claims. If this court did not believe that such a possibility existed, then it would simply dismiss the case outright, rather than granting the plaintiff an opportunity to amend.

Based on Ms. Grayson's own description of the Desoto County action, it appears that the state court judge issued an order which reflected a similar openness to the possibility that Ms. Harwell's claim against Ms. Maclin might prove to have merit. That order was followed by a joint motion to dismiss the case filed by the parties, and this court will not speculate regarding whether this dismissal represented a victory for the plaintiff or the defendant in that action. In her brief, Harwell asserts that "[t]he litigation between Defendant/Counter-Plaintiff, Derricka Harwell and Rachel Maclin was settled between the parties and dismissed jointly and not by the

5

court" and she further asserts that "it is quite disturbing that counsel attempts to misrepresent to this Honorable Court the nature of the litigation in order to succeed on the present motion to dismiss." [Brief at 5]. For its part, this court is not prepared to state that Ms. Grayson's motion to dismiss reflects an attempt to mislead it regarding the nature of the Desoto County proceedings, but it does conclude that her briefing fails to establish a right to have the counterclaim against her dismissed on the basis of collateral estoppel.

Ms. Grayson next argues that the complaint's allegations of anonymous internet postings by her are insufficient to survive Rule 12(b)(6) scrutiny, writing that:

> Defendants' Motion in Opposition and Supporting Memorandi is little more than "conclusory allegations or legal conclusions masquerading as [facts]." *Id.* Defendants allege that the Plaintiff has made postings under fictitious names such as "Jane Deaux" but has provided no proof other than the use of a number of hashtags and using such conclusory allegations as "upon information and belief." Further, Defendants allege that the Plaintiff has admitted, which Plaintiff vehemently denies, that the Plaintiff made these postings but has provided no actual proof other than again using conclusory allegations and legal conclusions masquerading as facts. Lastly, Defendants claim that the Plaintiff, under the name "Amanda Stone," "posted a picture and address of Defendants home. . ." [Dkt. No. 26] but again provides no proof of such.

[Reply brief at 3]. Without question, arguments that a plaintiff has failed to present "proof" to support her claims is properly raised in a motion for summary judgment, not a Rule 12 motion to dismiss. Needless to say, a counter-claimant is not required to present "proof" in support of her allegations in her complaint, since such evidence is typically developed during discovery and presented at trial. Plaintiff's Rule 12 motion is due to be denied on this basis alone.

Even if Ms. Grayson later chooses to file a summary judgment motion to dismiss Ms. Harwell's counterclaim, she should be prepared to present authority in support of her contention that anonymous internet posts may not give rise to fact issues regarding whether a particular individual wrote the posts in question. In so stating, this court acknowledges that seeking to prove and recover on the basis of such anonymous posts may be a tall order, but it is hesitant to

make a blanket pronouncement that triable jury issues may not exist in this regard, regardless of the circumstances. Otherwise, this court has concerns that individuals could defame others with something approaching legal impunity, simply by not using their real names in their internet posts. It should also be emphasized that Ms. Harwell contends that she has been the victim of a sustained harassment and defamation campaign at the hands of Ms. Grayson, even alleging that:

> 7. On or about September 26, 2022, the Federal Bureau of Investigations (FBI) came to Counter-Plaintiff's home and advised her that Plaintiff/Counter-Defendant attempted to hire individuals to murder, specifically in the presence of her children.
> 8. That as a result, Defendant/Counter-Plaintiff, upon the request of the FBI and out of fear for her life was forced to move herself and her family from their home and was placed under protection.

[*Id.*]

If Ms. Harwell is able to present evidence in support of these allegations in response to any summary judgment motion, then this court will be more inclined to find triable jury issues regarding the identity of the internet poster(s) in question than in a case lacking proof of such disturbing allegations. Having said that, this court believes that Ms. Harwell would be well advised to support her claims with evidence developed during discovery, such as by issuing subpoenas to internet service providers in order to attempt to ascertain the identity of the person(s) making the posts in question. Ultimately, however, this court suspects that the competing allegations made by Ms. Grayson and Ms. Harwell will prove to be so irreconcilable with each other that it will be left to a jury to determine who is lying and who is telling the truth. This court offers no opinion on this matter, since its role in this case is not to serve as the trier of fact, but merely to determine whether triable fact issues exist. At this juncture, it rather strongly appears that they do.

It is therefore ordered that Ms. Grayson's motion to dismiss the defamation counterclaim against her is denied.

So ordered, this the 6th day of April, 2023.

                                           <u>/s/ Michael P. Mills</u>
                                           UNITED STATES DISTRICT JUDGE
                                           NORTHERN DISTRICT OF MISSISSIPP